OPINION OF THE COURT
Joseph D. Quinn, Jr., J.
In each of these companion actions, plaintiffs seek a declaratory judgment and an injunction against defendant utility company on the grounds that the utility’s activity in conducting an on-going program of feasibility studies on two tracts of land, which defendant has acquired by purchase in the Counties of Dutchess and Columbia, in order to determine whether those properties would be appropriate sites for the location of *159 nuclear-powered or coal-fired steam electric generating facilities, (1) constitutes a public and a private nuisance, and (2) violates the proscription of subdivision 3 of section 65 of the Public Service Law against the grant by any gas or electric utility of "[a]ny undue or unreasonable preference or advantage to any person, corporation or locality”.
In the event that such activity were to be found to amount to State action, plaintiffs also ask for a declaration that it is unconstitutional, in that it deprives them of the beneficial use of their property without due process of law. Further, in case that such conduct were to be determined to be authorized by article 8 of the Public Service Law, which governs the siting of electric generating facilities in New York, plaintiffs ask to have that enactment striken down as unconstitutional, in that it (1) unreasonably delegates responsibility for long-range electric system planning to a privately owned corporation, (2) fails to provide a fair method for locating electric generating plants, (3) abrogates local planning rights, (4) violates the right of judicial review of defendant’s protested activity, and (5) fails to regulate preapplication activity by utility companies.
Issue has been joined in the two suits, and defendant has moved, pursuant to CPLR 3212, for summary judgment dismissing the complaints on the ground that the causes of action pleaded lack merit. At issue is whether the complaints present genuine and live controversies which are sufficiently matured so as to be ripe for a final determination of rights and a grant of coercive relief.
Plaintiffs are a coalition of antinuclear and environmental activists, a member of Congress, two members of the Assembly, some townships in Columbia County, and a few residents, property owners and taxpayers of the areas involved.
Defendant is a privately owned and operated, domestic gas and electric corporation.
For all practical purposes, the two complaints before the court are identical. What may be said about one applies equally to the other. Plaintiffs have endeavored to plead four causes of action in each bill.
The gist of the first cause of action is that defendant, a gas and electric utility, has announced plans to build nuclear-powered or coal-fired steam electric generating facilities in the Mid-Hudson valley region, including Dutchess and Columbia Counties; that it intends to conduct studies of sites for such *160 facilities; that such studies will take two years or longer to complete; that such studies are calculated to produce information to be utilized in support of an application by defendant to the New York Board on Electric Generation Siting and the Environment; that the application for siting will not be made for several years; that plaintiffs may not oppose site approval until an application is made; that after such an application is filed, three years will be consumed in statutory hearings before a decision is reached; that defendant does not expect grant or denial of site approval before the year 1984; that the information to be collected by defendant will become obsolete before the application is made; that defendant favors nuclear power over coal power as a source of energy; that the construction and operation of nuclear-powered electric generating facilities will endanger life and environment in the Hudson valley, cause fish kills in the river, produce toxic radiation and hazardous nuclear waste, lead to sabotage and acts of God, bring transient workers to the area, increase traffic and otherwise result in widespread nuisance; that there is no existing, proven technique for the dismantling of such plants after their usefulness comes to an end; that the construction and operation of coal-fired electric generating facilities will, in other ways, endanger the ecology, the environment and life in general and otherwise result in nuisance. It is further alleged that all of this creates fear and apprehension in plaintiffs and in the class that they would represent.
The 29 allegations of the first count of the complaint are iterated in the second count. Tacked to them is an averment that Con Ed’s purported wrongdoing subjects plaintiffs to "unreasonable prejudice and disadvantage contrary to Public Service Law, § 65(3)”.
The 29 allegations of the first count and the two allegations of the second count are repeated in the third cause of action. This cause of action is conditional in nature and attacks purported State action on defendant’s part.
The 33 allegations of the first three counts are incorporated in the fourth cause of action which is concerned with the constitutionality of the New York siting statute.
In their memoranda of law, plaintiffs characterize the third and fourth counts as "alternative causes of action”.
Defendant’s answers consist, in the main, of general denials. Defendant admits that it has conducted preliminary site stud *161 ies and that it plans closer investigation of properties that it has purchased.
In an interim order made pursuant to the provisions of section 71 of the Executive Law, this court directed plaintiff’s attorneys to notify the Attorney-General of New York of the possible challenge here to the constitutionality of article 8 of the Public Service Law. In an affidavit filed herein, the Attorney-General declined to intervene, expressing an opinion that the constitutional issues here are not ripe for adjudication. In this affidavit, the Attorney-General, making an observation to the effect that defendant relies upon the siting statute as shelter against nuisance claims, voiced the belief that article 8 of the New York Public Service Law does not immunize a power company against such claims arising out of site study activities. While this court has no quarrel with that concept, it hastens to say, however, that it has found nothing in defendant’s pleadings, moving papers, memoranda or oral argument which would lead it to believe that defendant has asserted any claim of insulation under article 8 or any other statutory enactment or any agency regulations.
Subsequent to the commencement of these actions, and, indeed, after Con Ed moved for summary judgment here, plaintiffs filed a formal complaint with the Public Service Commission in an effort to obtain an order from that agency directing defendant to cease its site study activities. The administrative proceeding so instituted is now pending and parallels the suits at bar.
The chief arguments advanced by Con Edison in support of its motions for summary judgment are that (1) plaintiffs are not aggrieved and that they therefore lack standing or capacity to sue, and (2) plaintiffs have failed to raise a justiciable issue.
Although confronted by Con Ed’s applications, plaintiffs have failed to come forward with proof that any act is being done by this defendant, or is threatened or imminent, which could cause material special injury to them. Notwithstanding their averments of nuisance, plaintiffs make no showing in their opposing papers that defendant’s conduct has resulted in noise, dust, odor, unsightliness or any different sort of inconvenience to them or others. It appears that this omission on their part is not due to inadvertence. For in an affidavit which forms a part of the opposing papers, the lead plaintiff’s executive director, John Mavretich, says that he is "[a]dvised by *162 counsel that the appropriate stage in a lawsuit for the proof of facts is the trial” and that "[tjhis is thus not the stage at which plaintiffs are to submit the proofs available to them.”
Quite obviously, plaintiffs misconceive the office and function of a motion for summary judgment. The granting of such a motion is the procedural equivalent of a trial (Falk v Goodman, 7 NY2d 87, 91). And "[ijt is axiomatic that a party who opposes summary judgment must reveal his proofs in order to show that there is a bona fide issue requiring a trial (Di Sabato v Soffes, 9 AD2d 927).” (Freedman v Chemical Constr. Corp., 56 AD2d 514, 516.)
It is true that in opposing the motions here, plaintiffs have submitted some evidence to the effect that the specter of Con Edison’s investigation of the Dutchess-Columbia area as a potential location for an atomic power plant has tended to depress the local real estate market. But that evidence, sparse and inconclusive as it is, is hardly sufficient to defeat the motions. Indeed it serves a contrary purpose. It stresses and accentuates the fact that, at best, plaintiffs, in their pleadings and papers, have done no more than to articulate a suspicion and an anxiety that possible future governmental approbation of plans, which are currently in the exploratory stage, may one day permit construction and operation of a nuclear-powered electric generating plant in the Mid-Hudson valley.
And it is nearly impossible to. conclude that this litigation has any purpose other than to prevent the use of atomic power as an energy source. To be sure, the complaints here challenge the use of coal as fuel to generate electric current. But that has all of the earmarks of a red herring. As the corporate name of the lead plaintiff infers, nuclear engery is the target.
If that be so, it demonstrates the unseasonableness of plaintiffs’ actions. They are predicated upon a contingency which may never occur. The high degree of uncertainty which Con Edison faces in bringing its plans for a nuclear power plant to fruition is perhaps best illustrated by a brief glance at the elaborate statutory and regulatory procedures which have been devised by New York’s Legislature and its administrative bodies and by the Congress of the United States and the Federal agencies to control development of nuclear energy.
At the risk of oversimplification, it may be said that, in New York, any entity desiring to construct a nuclear electric generating facility must pursue its plans by applying to the *163 State Board on Electric Generation Siting and the Environment for a certificate of environmental compatibility and need. (Public Service Law, art 8, §§ 140-149-a.) The applying entity must navigate its way through an adversary hearing, a possible rehearing and judicial review in the appropriate Appellate Division of the Supreme court and in the New York Court of Appeals.
If the applicant succeeds in New York, then it must proceed to the Federal level and apply to the Atomic Energy Commission and the Nuclear Regulatory Commission for license to construct a nuclear power plant. After adjudicatory hearings before the appropriate administrative agencies, the application is subject to review by the United States Court of Appeals and the United States Supreme Court. If the applicant obtains a license to build a plant and does so, it must return to the Federal agencies and seek a license to operate the nuclear power plant and again face hearings and judicial review before obtaining the operating license. (Cf. Vermont Yankee Nuclear Power Corp. v NRDC, 435 US 519.)
From all of this, it is evident that the event which plaintiffs fear is at least several years away and that it may never come to pass. Manifestly, plaintiffs are before this court with a controversy which is far from being ripe for adjudication. The relief that they seek is a declaration of rights and a preventive injunction. "[A] request for a declaratory judgment is premature if the future event is beyond the control of the parties and may never occur (Prashker v United States Guar. Co., 1 NY2d 584).” (New York Public Interest Research Group v Carey, 42 NY2d 527, 531.) For this reason, this court will not entertain these actions.
Especially in the wake of the Three Mile Island incident, no right-minded Jurist could be insensitive to public concern over the dangers associated with nuclear energy. But as Mr. Justice Rehnquist observed in Vermont Yankee Nuclear Power (supra, pp 557-558), "Nuclear energy may some day be a cheap, safe source of power or it may not. But Congress has made a choice to at least try nuclear energy, establishing a reasonable review process in which courts are to play only a limited role. The fundamental policy questions appropriately resolved in Congress and in the state legislatures are not subject to re-examination in the federal courts under the guise of judicial review of agency action. Time may prove wrong the decision to develop nuclear energy, but it is Congress or the *164 States within their appropriate agencies which must eventually make that judgment. In the meantime courts should perform their appointed function.”
Accordingly, defendant Con Edison’s motions are granted and the complaints in these suits are dismissed.